Filed 9/16/25  Tsatryan v. Tsatryan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| ARTHUR TSATRYAN, | B335754 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC680322) |
| v. | |
| POLINA TSATRYAN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of dismissal of the Superior Court of Los Angeles County, Robert S. Draper and Jill T. Feeney, Judges.  Affirmed; appeal dismissed in part.

Arthur Tsatryan, in pro. per., for Appellant.

No appearances for Respondents.

_____

In May 2015 the family court entered a judgment of dissolution of Arthur and Polina Tsatryan's marriage and

subsequently awarded Polina[1] 100 percent of their former marital residence. Arthur then filed a civil action against Polina and 12 lawyers and real estate professionals involved in the family law action, alleging they lied in the family court as part of a conspiracy to defraud Arthur of his property and evict him from his home. By late 2019 all defendants except Polina obtained dismissals. In 2023 the trial court on its own motion issued an order to show cause why the action should not be dismissed under principles of claim preclusion. After a hearing on the order to show cause, the court issued a statement of decision holding the 2018 and 2019 dismissals were final and could not be relitigated, and as to Arthur's remaining causes of action against Polina, Arthur was seeking to relitigate the family court's decisions that this court affirmed on appeal. On March 21, 2024 the court dismissed the civil action without prejudice.

Arthur appeals from the order of dismissal, contending the trial court lacked authority to dismiss the civil action on its own motion; erred in denying Arthur's earlier motion for summary judgment; improperly applied claim preclusion to dismiss the action; and failed to rule on Arthur's outstanding discovery motions. These arguments lack merit. Arthur also contends the trial court in 2019 erred in granting the special motion to strike the complaint filed by Polina's former attorney Dennis Block and in entering a judgment of dismissal as to another former attorney for Polina, David Kozich, on the basis Arthur failed to amend his complaint following the court's order sustaining Kozich's demurrer with leave to amend. Because we have no jurisdiction

---

[1] We refer to Arthur and Polina by their first names to avoid confusion.

2

to review the 2019 orders that are long since final, we dismiss that portion of Arthur's appeal. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Family Law Action*[2]

Arthur and Polina were married on August 5, 1987. They separated in August 2009, and Arthur filed a petition for dissolution of marriage on September 23, 2009. After a five-day trial, on May 21, 2015 the family court entered a judgment of dissolution finding in relevant part that their Santa Clarita residence (Santa Clarita property) was community property. Arthur appealed from the judgment, and we affirmed. (*In re Marriage of Tsatryan* (Feb. 13, 2018, B265467) [nonpub. opn.].)

On January 26, 2016 the family court issued an order pursuant to Family Code section 1101, subdivision (h), awarding Polina 100 percent of the Santa Clarita property after finding Arthur secretly caused seven deeds of trust to be recorded against the property in favor of Arthur's friends and relatives, creating total encumbrances of substantially all of the property's value. The court found by clear and convincing evidence that Arthur's breach of fiduciary duty constituted malice, oppression, or fraud under Civil Code section 3294. The court retained jurisdiction over the Santa Clarita property, execution of the interspousal transfer deed, and all issues related to the encumbering deeds.

---

[2] Our discussion of the factual and procedural history of the family law action is taken from *In re Marriage of Tsatryan* (Jan. 14, 2019, B270784 & B276299) (nonpub. opn.) and *In re Marriage of Tsatryan* (Feb. 25, 2025, B332042) (nonpub. opn.).

3

Arthur appealed, and we affirmed. (*In re Marriage of Tsatryan* (Jan 14, 2019, B270784 & B276299) [nonpub. opn.] (*Tsatryan*).)

On May 10, 2016 the family court clerk issued a writ of possession for the Santa Clarita property based on the court's January 26, 2016 order. According to a declaration filed by Polina's attorney, Arthur failed to leave the property or pay the mortgage, resulting in arrears of approximately $50,000. On May 26 Arthur filed an ex parte application to quash the writ of possession, arguing Polina had failed to follow the unlawful detainer procedure to evict him from the property. After a hearing, on May 31, 2016 the court denied Arthur's request, ruling that issuance of the writ of possession was proper under Family Code section 290 to enforce the court's January 26, 2016 order awarding Polina 100 percent of the property. The court rejected Arthur's contention Polina needed to file an unlawful detainer action in order to obtain a writ of possession, observing "[t]he unlawful detainer process is made in order to determine who has the right to possession. . . . [T]hat determination has already been made on November 3, 2015 followed up by the court's order after hearing granting [Polina] exclusive use and possession of the property." Arthur appealed, and we affirmed. (*Tsatryan, supra*, B270784 & B276299.)

On August 15, 2017 Arthur filed a cross-complaint in the dissolution action asserting causes of action for fraud, libel, defamation, and conspiracy against Polina and Doe defendants. Arthur alleged Polina had gifted her interest in the Santa Clarita property to him by signing an interspousal transfer deed in 2003; Polina submitted false declarations and evidence in the

4

dissolution action to show she had not gifted the property;[3] Polina made defamatory statements that Arthur engaged in fraud; and Polina conspired with her divorce lawyers to deprive Arthur of his home and take his money.

On August 18, 2021 the family court set an order to show cause why it should not dismiss Arthur's cross-complaint without prejudice, on the basis that Arthur's claims for fraud, libel, and conspiracy were beyond the court's retained jurisdiction over the marital property and should therefore be pursued in a civil action. Arthur declined to provide testimony at the hearing on the order to show cause, and on November 15, 2021 the court dismissed Arthur's cross-complaint without prejudice. Arthur did not appeal from the dismissal, but in 2023 he moved to vacate the order of dismissal, which the court denied. Arthur appealed (his 17th appeal), and we affirmed. (*In re Marriage of Tsatryan* (Feb. 25, 2025, B332042) [nonpub. opn.].)

B. *The Civil Complaint*

On October 20, 2017 Arthur, representing himself, filed a civil action against Polina and Doe defendants. In his first amended complaint filed in March 2018, Arthur named as defendants 12 individuals involved in the family law action. Arthur named, among others, Polina's divorce lawyer (Steven Fernandez);Fernandez's colleagues (Michael Kelly, Mark Karney, and Steven Shore); the lawyer who prepared Polina's 2016

---

[3]     On Arthur's appeals from the dissolution judgment and 2016 order awarding the Santa Clarita property to Polina, we held substantial evidence supported the family court's finding that Polina did *not* gift Arthur the Santa Clarita property. (*Tsatryan, supra*, B270784 & B276299.)

application for writ of possession (Block); a lawyer who made two appearances for Polina in 2017 (Kozich); Arther's divorce lawyers from 2009 through 2012 (Michael Trope and Marshall Waller); and a deputy public defender who represented Polina in a 2013 contempt hearing initiated by Arthur (Michael Powell).  The complaint also named two realtors: Rebecca Epstein, who represented Arthur and Polina in their efforts in 2012 to sell a second property in Tarzana, and Brian Melville, whom the family court appointed to sell the Santa Clarita property in 2016.  Finally, the complaint named Katherine Camara, a superior court clerk, who in 2016 entered the family court's order transferring Arthur's interest in the Santa Clarita property to Polina.

Arthur's operative second amended complaint (complaint) asserted nine causes of action, including fraud, libel, defamation, conspiracy, wrongful eviction, and intentional infliction of emotional distress, and it sought punitive damages, equitable relief, and declaratory relief.  Arthur alleged Polina conspired with the other defendants to introduce false testimony in the dissolution action to destroy Arthur emotionally and financially and to defraud him of his interest in the Santa Clarita property.  Arthur alleged in his wrongful eviction cause of action that Polina, her attorneys, and court staff wrongfully evicted Arthur from the Santa Clarita property by submitting a false application for issuance of a writ of possession, which the court clerk issued on May 10, 2016.

Between June 2018 and November 2019, each of the defendants (except Polina) prevailed on a demurrer or special

motion to strike.[4]  As relevant here, on May 1, 2019 the trial
court entered a judgment of dismissal with prejudice as to Kozich
because Arthur failed to timely amend the complaint after the
court sustained Kozich's demurrer to the first amended complaint
with leave to amend.  On May 15 the court granted Block's
special motion to strike under Code of Civil Procedure
section 425.16, subdivision (b)(1),[5] finding Block's alleged conduct
was protected litigation activity under section 425.16,
subdivision (e), and Arthur was unlikely to succeed on the merits.
The court explained, "Block's prosecution of the unlawful
detainer action against Arthur, and other filings related thereto,
fall squarely within the litigation privilege, since they are
communications by authorized participants to achieve the objects
of litigation with a logical relation thereto."

C.      *Pretrial Motions and Order To Show Cause re Dismissal*
        On January 11, 2019 the trial court stayed the civil action
with respect to Polina pending resolution of Arthur's 2017 cross-
complaint in the family law action.  On November 17, 2021, after
the family court dismissed the cross-complaint, the trial court
lifted the stay in the civil action.
        On February 16, 2022 Arthur filed a motion for summary
adjudication (styled as a motion for summary judgment) with
respect to his fifth cause of action for wrongful eviction.  The trial
court denied the motion, finding the evidence cited in Arthur's

---

[4]     Judge Joseph R. Kalin presided over the action until the
case was reassigned on July 16, 2018.  Judge Robert S. Draper
presided over the case from July 16, 2018 until June 6, 2023.

[5]     Further undesignated statutory references are to the Code
of Civil Procedure.

7

moving papers established that Arthur could not prevail on the cause of action as a matter of law. The court reasoned, "By citing a court order in which the [family] court grants Polina 100% ownership of the subject property, Arthur necessarily shows that there is no triable issue of material fact regarding proper ownership of that property but what this 'fact' establishes as a matter of law [is] that Arthur cannot state a cause of action since allowing him to pursue that claim in this action [would] result in an impermissible collateral attack on a final judgment."

On July 21, 2022 the trial court (Judge Draper), on its own motion, ordered Arthur to show cause (OSC) "why this action should not be dismissed as an improper [c]ollateral [a]ttack on a [f]inal judgment." After multiple continuances, at a hearing on March 3, 2023 the court heard argument from Arthur and set a deadline for Arthur to file a responsive brief on the OSC. The court indicated it would take the matter under submission after Arthur filed his brief. On March 29, 2023 a different judge[6] discharged the OSC and set a trial setting conference for June 2, 2023.

In April 2023 Arthur filed a motion to strike Polina's answer and to enter a default judgment as a terminating sanction under section 2023.030, subdivision (d), based on Polina's alleged failure to comply with a 2018 order compelling her to provide further responses to his requests for production. A month later Arthur filed a motion to have his 2018 requests for admission deemed admitted under section 2030.280 based on Polina's failure to serve responses to the requests.

_____

[6]     Judge Curtis A. Kin entered the order discharging the OSC because the trial court where the case was pending was "dark" on the date of the hearing.

8

On June 6, 2023 the case was reassigned to Judge Jill T. Feeney, who had replaced Judge Draper in the department where the case was pending. On July 27 the trial court sua sponte entered a minute order (again) setting an OSC why the case should not be dismissed under principles of res judicata (claim preclusion).[7] As the court explained, Polina was now the only remaining defendant, and "[t]he gravamen of [Arthur's] second amended complaint is that he was wrongfully evicted from a residence and that [Polina] and others told lies in the family court case in order to take the property from him." Arthur was "seeking to challenge rulings and actions taken in the family court case between the parties," and "[t]he doctrine of res judicata bars the relitigation of this previously decided matter." The court observed it had "inherent authority to dismiss cases that are patently frivolous," and it set a hearing date on the OSC and a schedule for Arthur to file a brief. The court continued the hearings on Arthur's outstanding motions, including his motion for terminating sanctions and his motion to have the requests for admissions deemed admitted.

In his opposition brief, Arthur presented many of the arguments he now raises on appeal. Arthur argued the trial court "fraudulently removed" Block and Kozich from the case in 2019, and therefore Polina was not the only remaining defendant.

---

[7] The Supreme Court has suggested courts should more accurately "use the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) We therefore use the term "claim preclusion" in describing Arthur's and the court's discussion of res judicata.

9

Further, the court did not have authority to dismiss the action on its own motion, and because the court discharged the 2022 OSC, it was now precluded from issuing another OSC. Arthur also argued that claim preclusion did not apply to Arthur's civil claims because the May 21, 2015 judgment of dissolution did not adjudicate those claims, and the trial court was the proper forum to resolve Arthur's tort claims.

The trial court held a hearing on the OSC on October 26, 2023. Arthur waived oral argument and submitted a written brief in lieu of oral argument.[8] On November 22 the court issued a six-page statement of decision dismissing Arthur's action without prejudice. The court explained that trial courts have inherent authority to dismiss an action that is frivolous and clearly barred by claim preclusion. Referring to our decisions in *Tsatryan, supra*, case Nos. B270784 and B276299, which affirmed the 2016 family court orders awarding Polina 100 percent of the Santa Clarita property and denying Arthur's request to quash the writ of possession, the trial court ruled that Arthur's claims in the civil action were based on the same primary rights that were litigated and finally resolved in the family court. The trial court addressed each of Arthur's individual arguments, including a finding that the court struck or dismissed Arthur's claims against Block and Kozich in 2019, which rulings were final, and Arthur could not challenge those rulings four years later.

---

[8] The trial court issued a tentative decision, and Arthur filed objections to the decision. The court's final order largely adopted the tentative decision and included a few additional points addressing Arthur's objections.

Arthur timely appealed from the order of dismissal.[9]

## DISCUSSION

A.     *We Have No Jurisdiction To Review the Orders Dismissing*
       *Kozich and Granting Block's Special Motion To Strike*

Arthur contends the trial court made various errors in granting Block's special motion to strike and entering a judgment of dismissal with respect to Kozich after Arthur failed to amend the complaint.  However, these orders were entered in 2019 and are not reviewable in this appeal from the court's 2024 order dismissing the complaint.  As discussed, on May 1, 2019 the court entered a judgment of dismissal with prejudice as to Kozich, finding Arthur did not timely amend his allegations after the court sustained Kozich's demurrer to the first amended complaint.  And on May 15, 2019 the court granted Block's special motion to strike the first amended complaint under section 425.16.

A judgment dismissing a party with prejudice entered after an order sustaining a demurrer is appealable under section 904.1, subdivision (a)(1).  (*Hamilton v. Green* (2023) 98 Cal.App.5th 417, 423 ["'all that is left to make the order

---

[9]     On March 18, 2024 this court notified Arthur that his appeal was deficient because his civil case information statement did not attach a copy of a signed order or judgment of dismissal. (See § 581d [all dismissals ordered by the court "shall be in the form of a written order signed by the court and filed in the action"].)  In response, Arthur obtained and filed a signed order of dismissal dated March 21, 2024.  We treat Arthur's premature notice of appeal as filed immediately after entry of the signed order.  (Cal. Rules of Court, rule 8.104(d)(1).)

11

[sustaining the demurrer] appealable is the formality of the entry of a dismissal order or judgment"]; *Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 411, fn. 1 [an "order sustaining a demurrer without leave to amend is not appealable, but a party may appeal from the entry of dismissal after such order"]; see *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1370 ["'[a]n order dismissing fewer than all defendants from an action is a "final judgment" as to them, and is thus appealable'"].)  Likewise, "[a]n order granting a special motion to strike [is] appealable under section 904.1." (§ 425.16, subd. (i); see § 904.1, subd. (a)(13) [authorizing appeal from an order granting or denying a motion to strike under section 425.16]; *Gumarang v. Braemer on Raymond, LLC* (2025) 110 Cal.App.5th 370, 387.)

"California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8; accord, *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 68 ["'If the ruling *is* appealable, the aggrieved party *must* appeal or the right to contest it is lost.'"].)  Under this rule, we have no jurisdiction to review an appealable judgment or order from which a timely appeal was not taken.  (§ 906 ["The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."]; see *Reyes*, at pp. 67-68; *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 219 ["If a party fails to appeal an appealable order within the prescribed time limit, this court is without jurisdiction to review that order on a subsequent appeal"].)

12

Because we lack jurisdiction to consider the 2019 orders dismissing Kozich and Block, we dismiss this portion of Arthur's appeal.[10]

B.  *The Trial Court Did Not Err in Denying Arthur's Motion for Summary Adjudication with Respect to His Wrongful Eviction Cause of Action*

"'A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the

---

[10]  Arthur also argues he was not properly served with notice of the Kozich judgment and Block order.  But even if service of notice was deficient, this would only extend Arthur's deadline to appeal, not relieve him of that requirement.  (Cal. Rules of Ct., rule 8.104(a)(1)(C), (e); see *Kimball Avenue v. Franco* (2008) 162 Cal.App.4th 1224, 1228 ["When both the court clerk and the party submitting the judgment fail to serve the statutorily mandated notice of entry of judgment, the sole consequence is that a longer statutory period [of 180 days] for filing the notice of appeal comes into play. . . .  The lack of notice does not jeopardize the judgment."].)  In any event, the record reflects Arthur had actual notice of the orders in 2019.

Arthur also asserts the order sustaining Block's special motion to strike is "void."  A order that is void because of the absence of fundamental jurisdiction is subject to collateral attack at any time (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660), but most errors of procedure, pleading, evidence, and substantive law are not jurisdictional and do not invite collateral attack (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56).  The errors asserted by Arthur do not demonstrate an absence of fundamental jurisdiction over the parties and subject matter.

moving party is entitled to a judgment as a matter of law.""" (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Code Civ. Proc., § 437c, subds. (c) & (f); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A plaintiff moving for summary judgment or summary adjudication bears the initial burden of "prov[ing] each element of the cause of action entitling the party to judgment on that cause of action."  (§ 437c, subd. (p)(1).)  "[I]f a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law*, but would have to present his evidence to a trier of fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)  If the plaintiff meets that burden, the burden then shifts to the defendant "to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."  (§ 437c, subd. (p)(1); see *Aguilar*, at p. 849.)

"""""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment [or summary adjudication] and resolve doubts concerning the evidence in favor of that party.""" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273 ["a ruling on a motion for summary adjudication is reviewed de novo"].)

"[A] person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor." (*Daluiso v. Boone* (1969) 71 Cal.2d 484, 486; accord, *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039; see *id.* at p. 1037, 1039 ["[s]tatutory remedies are available for forcible entry and detainer" under §§ 1159 and 1160, but "[t]he statutory remedies are not exclusive"].) The essential elements of a tort cause of action for wrongful entry or eviction are (1) the plaintiff's "'peaceable possession,' of the premises" and (2) the defendant's "forcible entry." (*Spinks*, at pp. 1040, 1042.) "By dispossessing plaintiff without resort to judicial process, defendants expose[] themselves to potential tort liability for wrongful eviction." (*Id.* at p. 1042, citing *Daluiso*, at p. 486.)

Arthur did not meet his burden to present undisputed evidence to prove each element of his cause of action for wrongful eviction. His declarations and separate statement do not include any evidence he was in possession of the Santa Clarita property when he was allegedly evicted. Instead, his motion sought to relitigate the family court's determination years earlier that Polina did not deed Arthur ownership of the property in 2003 and that the property was community property. Arthur presented no evidence that he was locked out of the house or otherwise forcibly evicted.[11]

_____

[11] Polina in her declaration in opposition to the motion for summary judgment stated that Arthur had already vacated the Santa Clarita house, taking the furniture and other contents and leaving it in a filthy and damaged condition, before she had an

15

Arthur also argued in his summary adjudication motion that Polina never obtained a valid right of entry onto the Santa Clarita property because she did not pursue an unlawful detainer proceeding against him. But as the family court found in May 2016 in denying Arthur's motion to quash the writ of possession, the writ was warranted to enforce the trial court's January 26, 2016 order awarding Polina 100 percent of the property, and an unlawful detainer proceeding was unnecessary for Polina to obtain possession because the court had already granted Polina "exclusive use and possession of the property." (*Tsatryan, supra*, B270784 & B276299.) We affirmed this ruling in 2019. (*Id.*) The trial court correctly found that Arthur's summary adjudication motion was an improper attempt to collaterally attack the family court's final ruling. In any event, Arthur did not meet his burden to show he was entitled to a judgment for wrongful eviction, and the motion was properly denied.

C.    *The Trial Court Did Not Err in Applying Claim Preclusion To Dismiss the Action*
1.    *Arthur's civil causes of action were barred by claim preclusion*

"Claim preclusion prevents relitigation of entire causes of action. [Citations.] Claim preclusion applies only when 'a second

_____

opportunity to try to lock him out by executing on the writ of possession. Arthur argues that Polina's evidence cannot be considered because she did not file a separate statement of disputed material facts with her opposition. We do not reach the admissibility of Polina's evidence because Arthur failed to meet his initial burden.

16

suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326-327; accord, *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.) "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken v. Phillip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797; accord, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 (*Mycogen*).) "'[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered.'" (*Mycogen Corp.*, at p. 904; accord, *Boeken*, at p. 798.) "'[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.'" (*Boeken*, at p. 798; accord, *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 631.)

"'"The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."'" (*Mycogen, supra*, 28 Cal.4th at p. 904; accord, *Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.) "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Phillip Morris USA, Inc., supra*, 48 Cal.4th at p. 798; accord, *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 728.) The applicability of claim preclusion is a question of law that we

17

review de novo. (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218.)

The family law action and the civil action involved the same two parties: Arthur, as petitioner and then plaintiff, and Polina, as respondent and then defendant. As discussed, all other defendants named in the civil complaint won judgments of dismissal or prevailed on a motion to strike. And the family law action resulted in a final judgment on the merits: the May 21, 2015 judgment of dissolution determined the Santa Clarita property was community property, and the January 26, 2016 postjudgment order under Family Code section 1101, subdivision (h), awarded 100 percent of the property to Polina. We affirmed both orders.

Arthur's civil claims involved the same primary rights as the family law action. The civil complaint alleged in each cause of action that Arthur lost ownership and possession of the Santa Clarita property as a result of Polina's lies and fraudulent submissions to the family court. For example, Arthur's fifth cause of action for wrongful eviction alleged without detail that Polina (with the help of the codefendants) "illegally evicted Arthur from his residence in [Santa Clarita] by forged and fabricated court orders." To the extent Arthur now contends Polina's evidence supporting the family court's award of a 100 percent interest in the property was fraudulent, that issue was finally determined in the family court action.

Similarly, the complaint's first cause of action for fraud alleged Polina and the codefendants lied to the family court, alleging, for example, that Polina submitted false income and expense declarations in the dissolution proceedings to "illegally help[] Polina . . . to acquire the [Santa Clarita property] and

18

wrongfully evict[] him." Arthur's second, third, and fourth causes of action for libel, defamation, and conspiracy similarly addressed Polina and the codefendants' alleged lies to the court. Arthur's remaining cause of action (and requests for relief) for intentional infliction of emotional distress, punitive damages, equitable relief, and declaratory relief do not include any additional allegations, instead seeking different forms of relief arising from the same alleged injury. (See *Mycogen, supra*, 28 Cal.4th at p. 904.)

In his appellate brief, Arthur does not address whether the same primary rights were at issue in his causes of action in the civil action as those that were determined by the family court in its final judgment, notwithstanding the trial court's reliance on the primary rights doctrine in its order issuing the OSC and its final statement of decision supporting the dismissal order. Instead, he asserts he had "provided a detailed argument to the court's basis to dismiss under the res judicata doctrine," citing to his opposition to the trial court's tentative ruling. But the only argument Arthur presented in his opposition was that the family court's order awarding the Santa Clarita property was not "listed" among the causes of action he asserted in the civil case. Arthur does not provide any other cogent argument why claim preclusion did not bar his civil causes of action. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To overcome the presumption

19

that a judgment is correct, an appellant "must affirmatively establish prejudicial error by providing an adequate record, citing to the record, and presenting a persuasive argument with citations to supportive legal authorities." (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070; accord, *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [appellant's "burden on appeal 'includes the obligation to present argument and legal authority on each point raised'"].) Arthur has not met that burden.

### 2. *The trial court had authority to dismiss the action*

Arthur contends the trial court had no authority to dismiss this action on its own motion, arguing that the case relied on by the court, *Huang v. Hanks* (2018) 23 Cal.App.5th 179 (*Huang*), did not support the court's authority, and further, the court improperly relied on claim preclusion in dismissing the case. Arthur does not present any argument addressing why the *Huang* decision did not support the court's exercise of authority. We conclude the court had inherent authority to set the OSC and then to dismiss the case based on its finding that the surviving causes of action against Polina were, as a matter of law, barred by claim preclusion and frivolous.

In *Huang*, the trial court denied a petitioner's requests for civil harassment restraining orders on the pleadings as "'patently frivolous'" where the petition sought to restrain the former Governor of California, the Dalai Lama, and 29 others who allegedly controlled a Texas mental department to attack petitioner with "nano probes." (*Huang, supra*, 23 Cal.App.5th at p. 181.) The court explained, "'From their creation by article VI, section 1 of the California Constitution, California courts received

broad inherent power "not confined by or dependent on statute." [Citations.] This inherent power includes "fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation.""" (*Id.* at pp. 181-182; accord, *Venice Canals Resident Home Owners Assn. v. Superior Court* (1977) 72 Cal.App.3d 675, 679 [concluding superior court had inherent authority to order petitioners to post a bond as a condition of a stay pending final decision, explaining court had "inherent power . . . to exercise reasonable control over litigation before it, as well as the inherent and equitable power to achieve justice and prevent misuse of processes lawfully issued"].) Further, the court in *Huang* reasoned, "'[b]ecause courts should hear only actual disputes, and should prevent harassment of defendants, California courts possess the inherent authority to dismiss cases that are fraudulent or "vexatious.""" (*Huang*, at p. 182; see *McKenna v. Elliott & Horne Co.* (1953) 118 Cal.App.2d 551, 555 [trial court's order sustaining demurrer based on claim preclusion was supported by its "inherent power to dismiss an action which is clearly shown to be sham and without merit"].)

Here, the trial court found, based on its examination of the complaint, the records of the family law action, and our decisions in *Tsatryan, supra*, B270784 and B276299, that Arthur was relitigating claims and issues that had been finally decided against him in the family court. Application of claim preclusion may be decided on the pleadings. (See *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 324 ["if all of the facts necessary to establish that an action is barred on [claim preclusion] grounds appear on the face of the complaint" or are subject to judicial notice, "the complaint is subject to demurrer"]; *Key v. Tyler* (2019)

21

34 Cal.App.5th 505, 532 ["court may take judicial notice of court records in ruling on an issue of res judicata"].)

Moreover, our opinions in the prior appeals reflected that Arthur repeatedly attempted to relitigate the same issues in the family court action, and by the time of the trial court's OSC in the civil action, he had filed eight appeals, none of which was successful.[12] (See *In re Marriage of Tsatryan, supra*, B332042.) And, as Arthur acknowledges, in this action he spent more than six years pursuing his claims against Polina (since 2017), propounding discovery demands and filing a motion for summary judgment, motions to compel, and sanctions motions, all arising from a dispute over his right to the Santa Clarita property adjudicated in the family court action in 2016.

Although this case does not rise to the level of the patently frivolous allegations in *Huang, supra*, 23 Cal.App.5th at page 181 that the defendants had planted nano probes in the petitioner's body, Arthur's relitigation of the issues finally decided by the family court and affirmed on appeal was frivolous and vexatious, subjecting Polina, who is self-represented, to the burden of defending the same claims over and over notwithstanding the

---

[12] Arthur continues to prosecute his family law cross-complaint against Polina over the same subject matter and has filed 17 unsuccessful appeals from the family court's orders. Based on these and other appeals, our colleagues in Division Four declared Arthur a vexatious litigant in *Tsatryan v. Fernandez* (April 23, 2024, B326148, as mod. April 30, 2024) (nonpub. opn.). That appeal arose from a trial court order granting the special motion to strike filed by Polina's attorney Fernandez in Arthur's second civil action against Fernandez. Arthur filed that action after Fernandez prevailed on his special motion to strike in this action.

court's determination in her favor. Moreover, Arthur has expanded the list of wrongdoers to include an ever-widening circle of individuals tenuously connected to the underlying dispute, causing a significant waste of judicial resources, with well over a dozen superior court judges having now addressed Arthur's claims. Under these circumstances, as in *Huang*, the trial court had inherent authority to control the litigation and prevent abuse of the judicial process by setting an OSC, providing Arthur an opportunity to address the issues, and ultimately finding good cause to dismiss the action. (*Id*. at p. 182.)[13]

Finally, Arthur contends the trial court erred in dismissing the action before ruling on Arthur's motion to strike Polina's answer under section 2023.030, subdivision (d), as a terminating sanction for her failure to provide responses to his requests for production, and his motion to have his requests for admissions

---

[13] The trial court also had statutory authority to dismiss Arthur's complaint under section 438 for failure to state a cause of action. Section 438, subdivision (b)(2), authorizes a trial court on "its own motion [to] grant a motion for judgment on the pleadings," and subdivision (c)(3)(B)(ii) provides as a basis for granting a motion for judgment on the pleadings that "[t]he complaint does not state facts sufficient to constitute a cause of action against that defendant." (See *Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1019 [trial court had authority under § 438 to bring and then grant its own motion for judgment on the pleadings where complaint failed to allege plaintiff's exhaustion of administrative remedies or excuse from exhaustion requirement]; *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1397 & fn. 3 [affirming trial court's order granting judgment on the pleadings on the court's own motion, observing court had statutory authority under § 438].)

(RFA's) deemed admitted under section 2030.280. After continuing the hearing on the motions to the date of the OSC hearing and then ordering the action dismissed without deciding the discovery motions, the court impliedly denied the motions as moot. Given the court's determination that all of Arthur's claims against Polina were barred by claim preclusion, adjudication of Arthur's discovery motions would not have provided Arthur with effective relief. (See *In re D.P.* (2023) 14 Cal.5th 266, 277 ["A case becomes moot when events "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [the plaintiff] any effect[ive] relief.""]; *People v. Alsafar* (2017) 8 Cal.App.5th 880, 886 [""""a case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief""""]).

The only possible relief Arthur could have obtained was an award of sanctions. Arthur asserts on appeal in a conclusory manner that with respect to the RFA's, that monetary sanctions would have been "mandatory," but he fails to present any argument with respect to sanctions. Further, Arthur contends his motion should have been granted because Polina responded to his RFA's with a non-compliant one-page response. But the record does not contain Polina's response, so we have no way to evaluate this contention. Moreover, to the extent Arthur "believe[d] that the responses to [the RFA's] are deficient in some respect or that any objections thereto are not well taken, he [could have made] a motion to compel further responses under section 2033.290." (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 776; see § 2033.290, subds. (a)(1) & (2) ["On receipt of a response to requests for admissions, the party requesting admissions may move for an order compelling a

24

further response" if the party believes "the answer to a particular request is evasive or incomplete" or "an objection to a particular request is without merit or too general."].)

Arthur did not move to compel further responses before requesting the draconian remedy of deeming the admissions admitted. (See *St. Mary v. Superior Court, supra,* 223 Cal.App.4th at p. 784 ["RFAs are not to be deemed admitted unless the party to whom RFAs are propounded fails to respond prehearing to RFAs in a manner that is substantially code-compliant (§ 2033.280, subd. (c)), or he or she is recalcitrant and violates a court order compelling further responses that are deficient (§ 2033.290, subd. (e)"].) In the absence of an adequate record or legal argument, Arthur has forfeited his contention that the court should have ruled on his motion to deem the RFA's admitted. (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn., supra,* 94 Cal.App.5th at p. 1070.)

Arthur did not seek monetary sanctions in his motion to strike Polina's answer and enter her default as a terminating sanction.[14] Further, even if the trial court had granted Arthur's

---

[14] In his motion for terminating sanctions Arthur argued Polina failed to serve responses to Arthur's document requests after the trial court ordered code-compliant responses. Arthur submitted a declaration stating that in response to the court's order, Polina served non-compliant "random pages of different, unenumerated, and unrelated documents" on his residence. In her opposition, Polina argued she served the requested documents on Arthur. The documents served by Polina are not attached to Arthur's motion or otherwise in the record, and thus we cannot evaluate whether they complied with the court's order. And in his appellate brief, Arthur argues only that the court

25

motion and entered a default against Polina as a terminating sanction (albeit unlikely), that would not have provided relief for Arthur unless he obtained a default judgment. But the defense of claim preclusion would have barred entry of a judgment in Arthur's favor for failure of the complaint to allege a valid cause of action. (*Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 459 ["'If the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand.'"].) Thus, there was no reason for the trial court to delay dismissal of the action in order for Arthur to first litigate his motion for terminating sanctions.

## DISPOSITION

To the extent Arthur purports to appeal the May 1, 2019 judgment of dismissal with prejudice as to Kozich and the May 15, 2019 order granting Block's special motion to strike the first amended complaint, Arthur's appeal is dismissed. In all other respects, we affirm the March 21, 2024 order dismissing the action without prejudice. The parties are to bear their own costs on appeal.

FEUER, J.

We concur:


MARTINEZ, P. J.          SEGAL, J.

---

"swept the Motion under the carpet, bluntly aiding and abetting Polina."

26